United States District Court
District of Minnesota

Mahmood Khan,

                Plaintiff,

v.

City of Minneapolis *et al.*,

                Defendants.

Civil Case No. 16cv3104 PJS/DTS

**PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF
MOTION FOR TEMPORARY
RESTRAINING ORDER**

## Facts

Plaintiff is a Minnesota resident who has owned and managed rental housing properties in Minneapolis for over 30 years.  Defendant, a municipal corporation, requires that all rental dwellings within its boundaries be licensed, and plaintiff has duly obtained licenses from the defendant for all of his rental properties.  The plaintiff owns all of his rental properties either in his own name or jointly with is wife. Plaintiff earns his living and supports his family primarily through the operation of his rental property management business.

At all relevant times herein, plaintiff has rented mostly to low income tenants, who are often recipients of public assistance. Also, the overwhelming majority of plaintiff's tenants have always been individuals who are members of "protected classes" (*i.e.*, individuals protected against discrimination on account of race, color, religion, sex, familial status, or national origin) for the

purposes of the U.S. and Minnesota statutes forbidding discrimination in the provision of rental housing.

In February 2015 plaintiff possessed licenses from the defendant for 43 rental dwellings in Minneapolis. On February 13, 2015 the defendant notified the plaintiff that it would seek to have all of plaintiff's rental housing licenses revoked under a provision of defendant's rental housing code providing that any licensee who had ever had licenses for two individual properties revoked was thereafter subject to having all of his or her remaining rental housing licenses revoked. The plaintiff had had two such previous individual property license revocations – one on account of an incident in 2010 in which one of defendant's housing inspectors discovered that an individual was residing in a space not licensed for residency in one of the plaintiff's properties, and the other for the plaintiff's failure in 2013 to promptly dispose of trash that had been left by unknown individuals in the back yard of another of plaintiff's rental properties.

Plaintiff exercised his privilege under the defendant's rental housing code to an administrative appeal, with a full evidentiary hearing, that would precede any final decision as to the proposed revocation of all of his licenses. At the outset of his administrative appeal, and continuously thereafter, the plaintiff notified the defendant and the Administrative Hearing Officer ("AHO") selected by the defendant to conduct the evidentiary hearing that the

plaintiff would claim and attempt to show in his defense that revocation of all of his rental licenses, in his circumstances and the circumstances of his tenants, would be unlawful rental housing discrimination and would violate a duty that the defendant had undertaken, in return for receipt of Community Development Block Grants from the U.S. government, to "affirmatively further fair housing" in Minneapolis. These defenses which the plaintiff intended to assert in his administrative appeal will be referred to as the plaintiff's "fair housing" defenses.

When the plaintiff sought to have the defendant's AHO issue subpoenas to compel the attendance at the administrative hearing of witnesses to provide evidence as to the "fair housing" defenses, the defendant objected on the grounds of relevancy and the AHO sustained the objection and refused to issue the subpoenas.  Thereafter at the outset of the administrative evidentiary hearing, when the plaintiff attempted to introduce documentary evidence relevant to the "fair housing" defenses, the defendant again objected, on the grounds of relevancy, to the receipt of the proffered documentary and that AHO again sustained the defendant's objection.

The defendant took the position in the plaintiff's administrative appeal, with which the defendant's AHO agreed, that the plaintiff's proffered evidence as to his "fair housing" defenses was irrelevant because the only issue at the administrative appeals hearing was whether the plaintiff had

violated the explicit provisions of the defendant's rental housing licensing code which permitted revocation of all of the plaintiff's rental housing licenses on account of such violations.

The plaintiff's administrative appeal evidentiary hearing took place in three sessions during August and September 2016. While the administrative appeal hearing was being conducted, the plaintiff commenced this action in this court for monetary damages and injunctive relief on account of the defendant's claimed violations of the plaintiff's constitutional rights and rights under the U.S. Fair Housing Act (42 U.S.C. § 3601 *et seq.*) in the defendant's regulation of the plaintiff's rental housing management business.

In November 2015 the AHO made his Findings of Fact, Conclusions of Law and Recommendation in which the AHO recommended that all of the plaintiff's rental housing licenses be revoked on account of the plaintiff's violations of the defendant's rental housing licensing code.

On January 5, 2016 the plaintiff appeared through counsel at a "quasi-judicial" appeal hearing conducted by a committee of the defendant's City Council as to the AHO's recommended revocation of all of the plaintiff's rental housing licenses.  At this hearing the plaintiff once again asserted that the defendant could not lawfully revoke his licenses without considering whether such revocation was lawful under U.S. and Minnesota statutes forbidding

discrimination in rental housing, but the defendant's committee refused to make any decision as to such "fair housing" defenses and agreed with the AHO recommendation.  On January 16, 2016 the defendant's City Council, adopting the recommendation of both the AHO and its own committee, revoked all of the defendant's rental housing licenses. However the City Council provided that its revocation decision would be stayed "pending the resolution of any diligently pursued appeals."

The plaintiff sought *certiorari* review at the Minnesota Court of Appeals of the defendant's revocation of all of his rental housing licenses.  The plaintiff raised several issues in the proceeding at the Minnesota Court of Appeals, including that the defendant had denied him due process of law by its refusal to consider his "fair housing" defenses in the administrative appeal proceeding that preceded the revocation of all of his rental housing licenses.

On March 20, 2017, the Minnesota Court of Appeals, in an unpublished decision (File No. 16-00032), affirmed the defendant's revocation of all of the plaintiff's licenses.  The court of appeals refused to address the merits of the plaintiff's claim that he had been denied due process by the defendant's refusal to consider his "fair housing" defenses in the administrative appeals hearing; instead ruling that the plaintiff lacked standing to raise such "fair housing" defenses until such time as his licenses had actually been revoked.

On May 30, 2017 the Minnesota Supreme Court filed an Order denying further review of the Minnesota Court of Appeals' decision that had affirmed the revocation of all of the plaintiff's rental housing licenses.

Based on the stay of revocation pending appeals incorporated in the defendant's City Council's January 16, 2016 decision revoking the plaintiff's licenses, the plaintiff has continued to conduct his rental property management business.  In fact, to date the defendant has not sought to suspend or interrupt the plaintiff's rental property management business at any time on account of the defendant's license revocation proceedings against the plaintiff, and the plaintiff's business has continued, subject to ongoing standard inspections and housing code enforcement by the defendant.

The defendant does not now claim, nor has it claimed at any time during the lengthy proceedings for revocation of all of the plaintiff's rental housing licenses, that any of the plaintiff's licensed rental properties have been unsafe, not in compliance with rental housing code requirements, or otherwise not fit for habitation by tenants.

This court's Magistrate Judge has twice (first on January 4, 2017, and then on April 11, 2017), based on the parties' stipulations, ordered proceedings in this action stayed, first while the plaintiff was pursuing his certiorari review at the Minnesota Court of Appeals and then while the plaintiff was seeking further review at the Minnesota Court of Appeals.  The

6

parties had stipulated to such stays in the hope that the outcome of the state court appellate review might dispose of some disputed issues in this action.

This court's Magistrate Judge has now lifted the stay of proceedings in this action, and the defendant has indicated to the plaintiff's counsel that it intends to proceed with enforcement of the revocation of all of the plaintiff's rental housing licenses, initially by posting notices to tenants at all of the plaintiff's licensed premises that the premises are unlicensed and that the tenants must vacate the premises.

Based on the defendant's stated intent to proceed in the very near future with the posting of notices to vacate at all of the plaintiff's licensed premises, and on the plaintiff's claim that, on account of the defendant's refusal to consider the plaintiff's "fair housing" defenses in the administrative appeal proceedings prior to the license revocations becoming effective, the defendant has revoked the plaintiff's licenses without due process of law, the plaintiff is now seeking a Temporary Restraining Order to temporarily prevent the defendant from enforcing the revocation of the plaintiff's rental housing licenses until such time as an administrative appeal hearing at which the plaintiff's "fair housing" defenses are heard and decided has been conducted.

## **Argument**

The plaintiff is moving the court for  temporary injunctive relief.  When
evaluating such a request, a district court should consider four factors: (1) the
probability that the movant will succeed on the merits; (2) the threat of
irreparable harm to the movant in the absence of an injunction; (3) the state
of the balance between this harm and the injury that granting the injunction
will inflict on other parties; and (4) the public interest. *Dataphase Sys., Inc. v.
C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc).  Below, the plaintiff
will discuss each of those four identified factors in turn.

Likelihood of Success on the Merits

The plaintiff is moving for temporary injunctive relief to assure that he
will have a pre-deprivation administrative hearing, at which he will be
permitted to raise all of his available defenses to revocation of his licenses
and have those defenses decided, before, if it prevails after such a hearing,
the defendant may proceed with the revocation of all of the plaintiff's rental
housing licenses.  There is good reason to believe that the plaintiff will
ultimately prevail as to the procedural relief he is requesting, because his
request is supported by established case law as to the requirements of
procedural due process.

It is axiomatic that for due process to be satisfied the party facing
deprivation must be allowed to raise all available defenses.  *See, e.g., Philip*

*Morris USA v. Williams,* 549 U.S. 346, 353,127 S.Ct. 1057, 166 L.Ed.2d 940

(2007); *Lindsey v. Normet*, 405 U.S. 56, 66, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

Unless there are exigencies that dictate otherwise, the full hearing

mandated by due process must occur before the deprivation occurs, rather

than afterwards. *See, Goldberg v. Kelly,* 397 U.S. 254, 267-268, 90 S.Ct. 1011,

1020 (1970). Here, there were no such exigencies. There was no claim that

any of the licensed properties were unsafe or uninhabitable, and the

defendant has previously indicated that there was no need for haste by

allowing the plaintiff to continue to rent the properties during the more than

two years since the defendant's license revocation proceedings began.

The plaintiff is not asking this court to decide his "fair housing"

defenses in his favor in this proceeding; he is only asking that the court

enforce his right to raise the defenses, introduce evidence concerning them,

argue them and have them decided as part of his administrative hearing.

The "fair housing" defenses which the plaintiff seeks to raise are

"available defenses" with respect to the defendant's effort to revoke all of the

plaintiff's housing licenses based on the U.S. Supreme Court's decision in

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, __ U.S.

__, 135 S.Ct. 2507, 192 L.Ed.2d 514 (June 25, 2015), in which the Court held

that a claim of housing discrimination in violation of the Fair Housing Act (42

U.S.C. §3601 *et seq.*) can be based not only on a showing of "disparate

treatment", but also by showing "disparate impact", *i.e.*, that facially neutral laws or practices have a disparately harmful impact on "protected class" members, and explained that governmental policies that create "artificial, arbitrary and unnecessary barriers" to nondiscriminatory housing are subject to disparate impact claims. *See* 135 S.Ct. at 2524 - 2525.

In his administrative hearing the plaintiff seeks to show that in the circumstances of his case, considering the many rental properties he successfully manages, the population of "protected class" tenants to whom he rents homes and the defendant's other available mechanisms for monitoring the plaintiff's management of his properties, the defendant's application of its ordinance providing for revocation of all of a licensee's licenses on account of prior revocations of two of the licensee's licenses, regardless of how many licenses the licensee holds, regardless of how much time passed between the two prior predicate revocations and regardless of the nature of the violations giving rise to the two prior predicate revocations, would constitute an "artificial, arbitrary and unnecessary barrier" to the plaintiff's ability to offer his properties for rent on a nondisciminatory basis and to his tenants' ability to rent the properties on a nondiscriminatory basis, and would thus be barred by the *Texas Dep't of Hous. & Cmty. Affairs* decision, *supra*.

The plaintiff's "fair housing" defenses also appear to be available defenses under the Minnesota Human Rights act because, although the

Minnesota Supreme Court has never ruled whether Minn. Stat. §363A.09, the part the Minnesota Human Rights Act forbidding discrimination in real property transactions, permits "disparate" impact claims, historically Minnesota looks to U.S. anti-discrimination statutes for guidance in interpreting its own similar statutes. *See, e.g., Hubbard v. United Press Intern., Inc.,* 330 N.W.2d 428 (Minn. 1983).

The provisions of the Fair Housing Act forbidding discrimination in the availability of rental housing (42 U.S.C. 3604 (a) & (b)) have remarkably similar language to the comparable provisions in the Minnesota Human Rights Act (Minn. Stat. 363A.09, Subd. 1, (1) & (2)). In light of the U.S. Supreme Court's decision in the *Texas Dep't of Hous. & Cmty. Affairs* case, *supra*, the plaintiff has a good faith basis for asserting his "fair housing" defense under the Fair Housing Act and the Minnesota Human Rights Act.

The recent Minnesota Court of Appeals decision upholding the defendant's revocation of all of the plaintiff's licenses on account of the two prior license revocations is no bar to the plaintiff obtaining the relief he is requesting from this court.

First of all, the so called *Rooker-Feldman* doctrine, barring litigants who have lost in state court from then commencing actions in federal court, rather than seeking writs of *certiorari* from the U.S. Supreme Court, to vindicate their claimed rights violations by state courts, does not apply in this

11

case, because this case was begun before the adverse state court decision was made.

This case, seeking, among other things, injunctive relief against the defendant applying its rental housing ordinance to the plaintiff in violation of the Fair Housing Act (*See, e.g.*, plaintiff's Complaint paragraphs 57 -59, 118, 137, 140 & 146) was initiated in September 2016, well before the Minnesota Court of Appeals March 20, 2017 decision.  The U.S. Supreme has ruled in *Exxon Mobil Corp. v. Saudi Basic Industries* Corp., 544 U. S. 280 (2005) that the *Rooker-Feldman* doctrine only applies if the U.S. District Court case was begun after the unfavorable state court decision (*See* 544 U.S. at 284). Therefore the *Rooker-Feldman* doctrine does not bar this court's jurisdiction to grant the plaintiff the temporary injunctive relief he is requesting.

Although *Rooker-Feldman* does not bar this court's jurisdiction, the issue remains whether this court should, on account of the Minnesota Court of Appeals decision, abstain from considering the plaintiff's request for injunctive relief.

Under 28 U.S.C. Sec. 1738, a prior state court decision receives the same preclusive effect in federal court as it would receive in the state court. *See Charchenko v. City of Stillwater*, 47 F.3d 981, 984 (8th Cir. 1995). Therefore this court, in deciding whether the Minnesota Court of Appeals decision affirming the revocation of all of the plaintiff's rental housing

licenses precludes this court from granting the injunctive relief he is

requesting, must look to Minnesota law for guidance. *Id*.

Recent Minnesota Supreme Court, decisions which all held that *res*

*judicata* should not be applied in the facts of the cases under consideration,

have uniformly emphasized that *res judicata* is a flexible doctrine and that

the focus of inquiry should be whether preclusion would work an injustice on

the party against whom it is urged. *See  Mach v. Wells Concrete Products Co.*,

866 N.W.2d 921 (Minn. 2015);  *Rucker v. Schmidt*, 794 N.W.2d 114 (Minn.

2011);  *Hauschildt v. Beckingham*, 686 N.W.2d 829 (Minn. 2004);  *R.W. v.*

*T.F.*, 528 N.W.2d 869 (Minn. 1995).

In *Hauschildt v. Beckingham*, *supra*, the court stated that:

Fundamental to both doctrines "is that a 'right, question or fact
distinctly put in issue and directly determined by a court of competent
jurisdiction * * * cannot be disputed in a subsequent suit between the
same parties or their privies * * *.' " [citations omitted] ....
....
We have observed that neither res judicata nor collateral estoppel is to
be rigidly applied. [citations omitted] Instead, the focus is on whether
their application would work an injustice on the party against whom
the doctrines are urged. Johnson, 420 N.W.2d at 613–14. In particular,
the United States Supreme Court has cautioned that res judicata
should be invoked only after careful inquiry because it "may govern
grounds and defenses not previously litigated" and therefore "blockades
unexplored paths that may lead to truth." Brown v. Felsen, 442 U.S.
127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

Under the established principles of Minnesota law applied in the

Minnesota Supreme Court cases cited above, the plaintiff, for the reasons

stated below, should not be precluded by the Minnesota Court of Appeals decision from pursuing his claim in this court that due process entitles him to a pre-deprivation hearing at which he can assert his "fair housing" defenses.

In its opinion affirming the defendant's revocation of all of the plaintiff's licenses, the Minnesota Court of Appeals dodged, rather than "directly determined", the issue of whether the plaintiff was entitled to an administrative hearing of the scope he sought. First, the state court simply stated that the defendant's administrative hearing ordinance established a narrow standard of review (which narrow standard of review is what gave rise to, rather than what would decide, the plaintiff's procedural due process claim). Second, the state court, virtually inviting the plaintiff to assert his claims in this court, stated that the plaintiff had no standing to assert his rights under the Fair Housing Act until after his licenses had been revoked.

Having been denied the opportunity to have his claim for procedural due process determined on the merits in the state court proceeding, it would "work and injustice" on the plaintiff, contrary to the principles of Minnesota *res judicata* law, for this court, on the strength of the state court decision, to also refuse to consider the merits of the plaintiff's claim.

Threat of Irreparable Harm

An injunction is an extraordinary legal remedy which may only be issued if the moving party shows a immanent threat of irreparable harm for

14

which there would be no adequate remedy at law. *Pulliam v. Allen*, 466 U.S. 522, 537, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984).

The plaintiff's affidavit served and filed herewith establishes that the plaintiff's rental properties are all located in Minneapolis and that the plaintiff earns his living substantially from the management and rental income derived from those properties.  The plaintiff states, and Section 244.1810 of the Minneapolis Code of Ordinances confirms, that the plaintiff may not offer those properties for rent to the public unless he is licensed by the defendant to do so.

The defendant has revoked all of the plaintiff's rental housing licenses and the affidavit of Edward F. Rooney served and filed herewith shows that during a telephone conference as to the status of this case on Monday, June 12, 2017, among Magistrate Judge Schultz and counsel for the parties, counsel for the defendant stated that it was the defendant's intention to begin enforcing its revocation of the plaintiff's licenses, by posting notices of license revocation on each of the licensed premises, by the end of this week.

Plaintiff's affidavit indicates, credibly, that the plaintiff depends on the rental income he receives from his licensed properties to keep his business alive.  Without licenses from the defendant, the plaintiff will receive no income and his business will completely fail and he will be out of business.

The likelihood that the behavior of the party to be enjoined will, if allowed to occur, completely destroy the moving party's business is a sufficient threat of irreparable harm to justify the issuance of injunctive relief. *See Packard Elevator v. I.C.C.,* 782 F.2d 112, 115 (8th Cir. 1986); *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 D.C. Cir. 1984);  *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C. Cir.1977).

Aside from being driven out of business if the revocation of his licenses is not temporarily enjoined, the plaintiff faces a separate irreparable harm from the revocation of his licenses, and that is the great likelihood that he, without any rent income to permit him to pay the expenses of owning the parcels of real estate on which his licensed residences are located, would have to sell those parcels of real estate.

The Eighth Circuit, recognizing the principles of Minnesota law that an ownership interest in any parcel of real estate is considered unique, and that where there is a loss of such interest, the common law remedy of financial damages is regarded as inadequate, has held that injunctive relief is warranted to prevent a loss of real property ownership. *See O'Hagan v. U.S.*, 86 F.3d 776, 783 (8th Cir. 1996).

The plaintiff has also shown that given either the impecunious nature of most of his tenants or the inability to identify vandals who might damage

his property if he is forced to leave it vacant, the legal remedy of a judgment for financial damages would be an impractical and inadequate remedy for financial losses he will suffer on account of his tenants remaining in his properties without paying rent and his vacant properties being vandalized if the defendant's revocation of the plaintiff's licenses is enforced.

<u>Balance of Harms and Public Interest</u>

In evaluating the balance of harms between granting or not granting the requested injunction, the court may consider not only harm to the parties, but also harm to non-parties. *See Moore's Federal Practice*, 3d §65.06[3], p. 65-24.

There is no reason to believe that either the defendant, the general public or the plaintiff's tenants will be harmed if the defendant is temporarily enjoined from enforcing the revocation of the plaintiff's licenses. There has been no claim by the defendant at any point in its revocation proceedings that any of the plaintiff's licensed properties are unsafe for occupancy or not in compliance with the defendant's housing code standards. Furthermore, under the terms of the temporary injunction proposed by the plaintiff, the plaintiff's properties would remain subject to inspection by the defendant's housing inspectors and enforcement as to any violations disclosed by inspections, which would afford the general public and the plaintiff's tenants ongoing protection against unsafe conditions on the licensed premises.

As to harms if the temporary injunction is not granted, the plaintiff's irreparable harm has already been discussed, but the plaintiff's tenants also face great harm if they are forced to vacate the premises they rent from the plaintiff.  The plaintiff's approximately 150 to 200 innocent tenants will be forced to find new rental homes.

The tenant statements submitted as exhibits to the plaintiff's affidavit show that not only are the plaintiff's tenants satisfied with the plaintiff as a landlord, they also fear that they will have great difficulty finding new homes if they are forced to vacate the homes that they rent from the plaintiff.  Based on the plaintiff's statement that he is aware that there is a great demand for affordable rental housing in Minneapolis, but a limited and diminishing supply of such housing, the fears of the plaintiff's tenants are warranted.

As to public interests in non-discriminatory housing, there are at least two related but distinct fair housing public interests implicated in these proceedings.

The first public interest is the interest that no one, including units of local government, should be able to have safe, sound low income rental housing units removed from the rental housing market, and thereby require protected class individuals residing in such rental housing units to move from such rental housing units, except for legitimate, nondiscriminatory reasons.

The second, explicit public interest is that municipalities should not be allowed to enforce ordinances that interfere with the availability of nondiscriminatory housing. 42 U.S.C. §3615, a provision of the Fair Housing Act, provides in relevant part,

> ... any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.

The plaintiff seeks, in the administrative hearing he is demanding, to be able to show that allowing all of his rental licenses to be revoked pursuant to the ordinance on which the defendant has relied for the revocations would be a discriminatory housing practice and invalid pursuant to 42 U.S.C. §3615.

## <u>Conclusion</u>

The plaintiff has shown entitlement to the Temporary Restraining Order he seeks, and the court should issue the requested order.


Dated: June 15, 2017                    ___s/ Edward F. Rooney_____
                                        Edward F. Rooney, #9321X
                                        Attorney for Plaintiff
                                        100 North Sixth Street, Suite 445A
                                        Minneapolis MN 55403
                                        Telephone: 612/285-7621
                                        Fax: 612/285-7623
                                        email: efrooney@rooneylaw.com