United States District Court
District of Minnesota

Mahmood Khan,

        Plaintiff,

Civil Case No. 16cv3104 PJS/DTS

v.

**TEMPORARY RESTRAINING ORDER**

City of Minneapolis *et al.*,

        Defendants.

Based upon the plaintiff's Motion for a Temporary Restraining Order and upon the defendant's having been provided with advance notice of the court's consideration of said motion;

IT IS HEREBY ORDERED:

1. The defendant is hereby temporarily restrained and enjoined, as to rental housing licenses issued by the defendant to the plaintiff that were in force and good standing as of February 12, 2015, from taking any adverse action respecting said licenses based either on:

   (a) the Minneapolis City Council Action approved on January 16, 2015 revoking all of said licenses;

   (b) under Minneapolis Code of Ordinances ("MCO") Section 144.1910 (a)(13)(a), the fact of the revocation by the defendant, prior to February 12, 2015, of licenses for two rental properties issued by the defendant to the plaintiff ; or

   (c) under Minneapolis Code of Ordinances ("MCO") Section 144.1910 (a)(19), any other claimed " good cause"

until such time as the defendant has afforded the plaintiff an appeal hearing, pursuant to MCO sections 244.1960 and 2.100, at which hearing the plaintiff will have the opportunity to raise, present relevant evidence (by subpoena, if necessary), have a decision or recommended decision on the merits made, and pursue available state court appellate review from any decision adverse to the plaintiff, as to the following defenses asserted by the plaintiff to the defendant's proposed revocation of all of plaintiff's rental housing licenses:

    (a)    that said revocation of all of plaintiff's rental housing license, in the plaintiff's circumstances and the circumstances of the tenants residing in plaintiff's licensed rental premises, would be unlawful rental housing discrimination, under the U.S. Fair Housing Act (42 U.S.C. §§ 3601 *et seq*.);

    (b)    that said revocation of all of plaintiff's rental housing license, in the plaintiff's circumstances and the circumstances of the tenants residing in plaintiff's licensed rental premises, would be unlawful rental housing discrimination, under the Minnesota Human Rights Act (Minn. Stat. §363A.01 *et seq*.);

    (c)    that said revocation of all of plaintiff's rental housing license, in the plaintiff's circumstances and the circumstances of the tenants residing in plaintiff's licensed rental premises, would be a violation of the defendant's duty, voluntarily undertaken as a condition or receiving Community Development Block Grants from the U.S. Department of Housing and Urban Development, to "affirmatively further fair housing."

2. The defendant shall promptly rescind by any available practical means any notice of revocation, posting of rental premises or other adverse action the defendant may have taken respecting the revocation of all of the plaintiff's rental licenses prior to the court's issuance of this Temporary Restraining Order herein.

3. A hearing on a motion by plaintiff for a preliminary injunction extending the duration of this Temporary Restraining Order shall be held on _____.

This Temporary Restraining Order is issued based upon the plaintiff's showing of the following:

A. **Likelihood of Success**. The plaintiff has shown, based on established precedent from the U.S. Supreme Court and upon the defendant's not claiming that there are any exigencies requiring an abbreviated or post-deprivation hearing, a reasonable likelihood of success on his claim that his rental housing licenses issued by the defendant may not lawfully be revoked without a pre-deprivation hearing at which the he is permitted to raise all available defenses, and that such a hearing has not been provided to him to date by the defendant.

B **Irreparable Harm**. The plaintiff has shown that the great likelihood of immediate, irreparable harm if the defendant is not restrained from enforcing the revocation of the plaintiff's rental housing licenses.

Specifically, the plaintiff has shown that:

(I) The plaintiff derives his livelihood from the ownership and management of rental residences in the City of Minneapolis, which are required to be licensed by the defendant.  Without valid rental housing licenses for his properties, the plaintiff cannot rent the properties to tenants and that without monthly rental income from his tenants the plaintiff's rental property management business will become completely untenable and will be destroyed.

(ii) All of the plaintiff's rental properties have ownership expenses, such as insurance, real estate taxes and utility charges associated with them.  Plaintiff pays these expenses with the mnthly rental income he receives from the properties' tenants. Furthermore, many of the rental properties which the plaintiff owns are subject to mortgages, the monthly payments on which the plaintiff can only pay with rental income from the properties.  Without the ability to rent his properties, the plaintiff will not be able to maintain ownership of his properties and will lose the properties, either by having to sell them or losing them through mortgage foreclosure.  Since the law regards each parcel of real property as unique, there would be no adequate remedy at law for the loss of plaintiff's rental properties caused by the defendant's unlawful revocation of the plaintiff's rental property licenses.

(iii) Many of the plaintiff's tenants, if they believe that the plaintiff's rental housing licenses have been revoked, will, either out of confusion or out of an attempt to take advantage of the plaintiff's situation, continue to occupy the plaintiff's properties without paying the plaintiff further monthly rents for the properties.  Because most of the plaintiff's tenants are impecunious and effectively judgment-proof, the plaintiff would have no adequate legal remedy for such loss of rental income.

(iv) If the defendant's revocation of the plaintiff's rental housing licenses is enforced, the plaintiff will be required  to notify his tenants that they must vacate their rental premises.  The plaintiff's experience has been that when his properties are vacant they are subject to vandalism and theft of fixtures by unknown individuals, which causes the plaintiff financial expense and loss for which he has no adequate remedy at law.

C.  **Balance of Harms**.  In contrast to the irreparable harm which the plaintiff has shown he would suffer from revocation of all of his rental housing licenses, there appears to be no harm to the defendant from allowing the plaintiff to continue to provide licensed rental housing to tenants.  Since the defendant is only being enjoined from enforcing revocation of all of the plaintiff's rental housing licenses based on specified past events, the plaintiff would be subject to the defendant's inspections and housing code enforcement respecting conditions occurring at the plaintiff's rental premises after the date of this Temporary Restraining Order.  The defendant has allowed the plaintiff to continue to provide rental housing, subject to inspections and housing code enforcement, since the Minneapolis City Council's January 16, 2015 Action revoking all of the plaintiff's rental housing licenses, and the defendant has not shown or claimed any difficulty or harm on account of having done so.  The defendant may actually be spared from embarrassment and expense if its providing notice of revocation to tenants and posting notices of revocation on the defendant's rental properties is delayed until after it is determined whether the defendant may lawfully revoke the plaintiff's licenses.

D.  **Public Interest**.  In assessing the public interest implicated by the plaintiff's request for a Temporary Restraining Order, the court may

consider the interests of individuals who are not parties to this action, such as the general public, plaintiff's tenants and the social service agencies from whom the plaintiff repeatedly receives requests for assisting in finding rental housing for their clients.  The plaintiff has shown the court that a great many of the plaintiff's 150 to 200 tenants wish to continue renting from him and fear that they will not be able to find affordable rental housing if they are forced to move from their current rental homes. Also, the plaintiff has shown that the great majority of his tenants are members of populations protected by the U.S. Fair Housing Act and the Minnesota Human Rights Act against discrimination in rental housing, *i.e.,* members of racial minority groups, recent immigrants, adherents to minority religions, disabled people or people having non-traditional familial status. It is in the public interest maintain the availability of safe, code-compliant affordable rental housing for such individuals.  Assuming that many of people in the population that the plaintiff serves will require public subsidies for their housing, it is less expensive for the public to provide such subsidized housing in the plaintiff's rental premises than to provide subsidized housing for such individuals in publicly funded homeless shelters.

**Bond**.  Based on the absence of any showing of additional expense or risk of financial harm to the defendant in allowing the plaintiff to temporarily continue to engage in his rental housing management business, subject to the defendant's ongoing inspections and housing code enforcement, the court determines that it is not necessary for the plaintiff to give a bond as a condition of the issuance of this Temporary Restraining Order.

Dated:   June _____, 2017        _____
                                  Patrick J. Schiltz
                                  Judge of U.S. District Court