UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MAHMOOD KHAN, | Case No. 16-CV-3104 (PJS/DTS) |
| Plaintiff, | |
| v. | ORDER |
| CITY OF MINNEAPOLIS, a municipal corporation; DOES 1-10, | |
| Defendants. | |

Edward F. Rooney and James D. Heiberg, for plaintiff.

Tracey N. Fussy, MINNEAPOLIS CITY ATTORNEY'S OFFICE, for defendants.

Plaintiff Mahmood Khan is a landlord who has been granted multiple rental-dwelling licenses by defendant City of Minneapolis ("the City"). In this action, Khan challenges the City's revocation of his licenses, alleging that the City deprived him of substantive due process and violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.

This matter is before the Court on the City's motion for judgment on the pleadings. For the reasons that follow, the motion is granted, and Khan's lawsuit is dismissed.

I.  BACKGROUND

Khan is the owner of 43 licensed rental properties in Minneapolis.  Compl. ¶ 13.  Khan has approximately 350 tenants, all but two of whom are members of classes protected under the FHA.  Compl. ¶¶ 14-15.  Most of Khan's properties are located on the City's north side.  Compl ¶ 19.

In 2010, the City revoked one of Khan's rental licenses due to two instances of illegal occupancy of the basement.  *In re Khan*, 804 N.W.2d 132, 136 (Minn. Ct. App. 2011).  A few years later, the City revoked another of Khan's rental licenses, this time for multiple garbage-disposal violations.  *Khan v. Minneapolis City Council*, No. A14-0455, 2014 WL 7237193, at *1 (Minn. Ct. App. Dec. 22, 2014).  In February 2015, after the Minnesota Court of Appeals rejected Khan's challenges to the second revocation, the City began the process of revoking all of Khan's remaining rental licenses under Minneapolis City Ordinance § 244.1910(a)(13).  That ordinance permits the revocation of all of a landlord's rental licenses when that landlord has had two or more rental licenses revoked or canceled.[1]  Compl. ¶¶ 33-34.

---

[1] As an additional basis for revoking Khan's licenses, the City cited Minneapolis City Ordinance § 244.1910(a)(19), a catch-all provision that permits "[a]dverse license action" based on "good cause."  Compl. ¶ 35.  As discussed below, Khan has abandoned all of his claims save his substantive-due-process challenge to the two-strikes provision and his disparate-impact claim under the FHA.  The Court therefore need not address Khan's claim that the good-cause provision is invalid.

Khan's challenges to the revocation of his remaining licenses were rejected by an administrative hearing officer, the Minneapolis City Council, and the Minnesota Court of Appeals. *In re Khan*, No. A16-0633, 2017 WL 1376379 (Minn. Ct. App. Mar. 20, 2017), *rev. denied*, (Minn. Mar. 30, 2017), *cert. denied*, 2017 WL 3839456 (U.S. Nov. 6, 2017) (No. 17-324). While the state proceedings were pending, Khan filed this federal action challenging the revocation of his remaining licenses. The parties stipulated to a stay pending the outcome of the state proceedings. ECF Nos. 16, 17. After the Minnesota Supreme Court denied Khan's petition for further review, the Court lifted the stay and Khan moved for a temporary restraining order ("TRO"). The Court denied Khan's motion following a hearing. ECF No. 41. Defendants now move for judgment on the pleadings.

## II. ANALYSIS

### A. Standard of Review

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is assessed under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although

the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(c) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). Here, Khan submitted various materials in opposition to defendants' motion for judgment on the pleadings. *See* ECF Nos. 45, 47. But the Court has not considered those materials, and thus the Court will not convert defendants' motion into one for summary judgment.

### B. Khan's Claims

Khan's complaint lists seven causes of action. At the hearing on defendants' motion, however, Khan abandoned all of his claims save two: (1) his claim that the mass revocation of his remaining licenses violated substantive due process; and (2) his disparate-impact claim under the FHA.

### 1. Substantive Due Process

Khan first argues that revoking all of his rental licenses on the basis of his two prior license revocations is arbitrary and capricious and therefore violates substantive

due process. Because Khan could have raised this claim when he challenged the mass revocation in state court, his claim is barred by res judicata.

"Minnesota law governs the preclusive effect of a prior Minnesota state court judgment." *Anderson v. City of St. Paul*, 849 F.3d 773, 777 (8th Cir. 2017). Under Minnesota law, res judicata is an "'absolute bar'" to relitigation "'when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter.'" *Id.* (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)).

Each of these elements is met here. Khan's substantive-due-process claim arises out of the same set of factual circumstances as the claims that he litigated in state court—the revocation of his remaining rental licenses. This case also involves the same parties as the state case—Khan and the City.[2] There was a final judgment on the merits, as the Minnesota Court of Appeals addressed and rejected each of Khan's challenges to the revocation (and the Minnesota Supreme Court denied further review). And finally,

---

[2]Khan also sued unnamed individuals "who are or may be responsible for all or some of the liability and relief sought herein." Compl. ¶ 3. Khan does not suggest that these individuals are anything other than City employees, nor does he argue that they are not in privity with the City. Moreover, because Khan did not specify that these defendants are being sued in their individual capacities, he is deemed to have sued them in their official capacities, meaning that his claims against them are simply additional claims against the City. *See Baker v. Chisom*, 501 F.3d 920, 923-25 (8th Cir. 2007).

Khan (who was represented by counsel) had a full and fair opportunity to present his substantive-due-process claim to the state courts.

Khan argues that the due-process challenge that he now wishes to pursue differs from the due-process challenges that he pursued in the state courts. That is true, but irrelevant. What matters is not what Khan *did* argue, but what Khan *could* have argued, and Khan *could* have pursued his substantive-due-process challenge to the mass revocation in the state proceedings. *Hauschildt*, 686 N.W.2d at 840 ("Res judicata not only applies to all claims actually litigated, but to all claims that could have been litigated in the earlier action."). Indeed, Khan raised a number of other due-process challenges in those proceedings, including a substantive-due-process claim (specifically, a claim that applying the ordinance deprived Khan of substantive due process because the ordinance is unconstitutionally vague).[3] *In re Khan*, 2017 WL 1376379, at *3-6.

Finally, under Minnesota law, "res judicata is a flexible doctrine that should not be rigidly applied without an analysis of whether the application of the doctrine would work an injustice on the party against whom it is urged." *Laase v. Cty. of Isanti*, 638 F.3d 853, 859 (8th Cir. 2011) (citation and quotations omitted). As noted, Khan brought a

---

[3]In his memorandum opposing defendants' motion, Khan asserts that he was not allowed to raise his current due-process challenge during the state proceedings. ECF No. 44 at 5. Khan cites nothing to support his claim, and his claim is belied by the fact that he was able to raise other due-process challenges, including a substantive-due-process challenge.

number of due-process challenges to the revocation of his licenses, and nothing precluded him from adding his current due-process challenge to the list.  Khan does not suggest any reason why application of res judicata would work an injustice in this case, and no such reason occurs to the Court.  Khan's substantive-due-process claim is therefore precluded.

Even if Khan's substantive-due-process claim were not procedurally barred, it would plainly fail on the merits.

> This Court has repeatedly emphasized the high burden facing a person who claims a violation of his or her Fourteenth Amendment rights.  To demonstrate the government violated a person's substantive-due-process rights, the claimant must show evidence of "a constitutionally protected property interest and that [governmental] officials used their power in such an arbitrary and oppressive way that it 'shocks the conscience.'"  *Entergy, Ark., Inc. v. Nebraska*, 241 F.3d 979, 991 (8th Cir. 2001) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).  In doing so, the claimant must show "more than that the government decision was arbitrary, capricious, or in violation of state law."  *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992).  Rather, the allegations must demonstrate, in part, a "truly irrational" governmental action, such as "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet."  *Id.*  "The government action must be arbitrary in the constitutional sense."  *Rozman v. City of Columbia Heights*, 268 F.3d 588, 593 (8th Cir. 2001) (en banc) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 129, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)).  "[T]he theory of substantive due process," we have noted, "is properly

> reserved for truly egregious and extraordinary cases."
> *Chesterfield Dev. Corp.*, 963 F.2d at 1105.  Such a case must be
> so abusive as to be "offensive to human dignity."  *See New v.
> City of Minneapolis*, 792 F.2d 724, 726 (8th Cir. 1986).

*Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. 2017) (per curiam).

An ordinance prohibiting a landlord who has had two licenses revoked from holding additional licenses for a period of five years does not come remotely close to meeting this extraordinarily high bar.  *See id.* at 985-87 (rejecting substantive-due-process challenge to increased enforcement action that resulted in landlord losing multiple rental licenses); *cf. Rummel v. Estelle*, 445 U.S. 263 (1980) (upholding life sentence with the possibility of parole under a three-strikes provision).  There is nothing irrational or conscience-shocking about such an ordinance.

The fact that Khan held 43 rental licenses that were subject to revocation does not change the Court's conclusion.  A municipality is not required to treat a landlord with a lot of licenses more leniently than a landlord with a few licenses.  To the contrary, a municipality could rationally conclude that the more licenses a landlord holds, the more important it is that the landlord comply with the housing code.  A large landlord who does not comply with the housing code will likely endanger the health and safety of more tenants than a small landlord who does not comply with the housing code.

For these reasons, the Court grants defendants' motion for judgment on the pleadings with respect to Khan's substantive-due-process claim.

2. FHA

Khan also brings a disparate-impact claim under the FHA.[4] To plead a plausible disparate-impact claim, a plaintiff must identify an "'artificial, arbitrary, and unnecessary'" policy and allege facts that demonstrate a causal connection between that policy and a disproportionately adverse impact on a class protected under the FHA. *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1112-14 (8th Cir. 2017) (quoting *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2522 (2015)). This is a difficult standard to meet: "A robust causality requirement ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Inclusive Communities*, 135 S. Ct. at 2523 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989)).

In *Ellis*, the plaintiff landlords alleged that the City had adopted a policy of discouraging for-profit rental housing. *Ellis*, 860 F.3d at 1109. In support of this allegation, the plaintiffs' complaint set forth a detailed description of numerous incidents in which the City targeted the plaintiffs for heightened housing-code

---

[4]As noted, at oral argument Khan expressly abandoned all of his claims save his substantive-due-process claim and his FHA disparate-impact claim. In addition, Khan's brief makes clear that he is not alleging intentional discrimination, but only that the City's actions have had a disparate impact on racial minorities (his tenants). ECF No. 44 at 2-3. Khan's FHA claim is not barred by res judicata because he was not permitted to raise it in the state proceedings. *In re Khan*, 2017 WL 1376379, at *3; Compl. ¶¶ 57-58.

enforcement, applied "above minimum" housing standards, threatened to revoke the plaintiffs' rental licenses, falsely claimed that two of the plaintiffs' duplexes did not meet licensing standards, and issued citations for alleged violations that did not actually exist. *Id.* at 1108-09. The plaintiffs further alleged that, in contrast to its aggressive enforcement of the housing code against for-profit landlords, the City applied a "hands off" policy to public housing. *Id.* at 1109.

The Eighth Circuit held that the plaintiffs had failed to plausibly allege the existence of a City policy that could be the cause of the alleged racial disparity. First, the court found that, to the extent the plaintiffs' claim could be considered to be an attack on the housing code itself, the plaintiffs had made "no factually supported allegations that those provisions are arbitrary or unnecessary to health and safety." *Id.* at 1112. Second, the court held that the plaintiffs had failed to plausibly allege that the City had a de facto policy of misapplying the housing code in order to discourage for-profit rental housing. *Id.* at 1112-14. The court acknowledged that the plaintiffs had identified various occasions on which the City had allegedly misapplied the housing code, but found that it was implausible to attribute those incidents to a *policy* of misapplying the housing code rather than to inevitable mistakes and disagreements. *Id.*

Khan's allegations in support of his FHA claim are very similar to the allegations found lacking in *Ellis*. As did the plaintiffs in *Ellis*, Khan claims that the City has

unfairly targeted him and other private landlords who rent to racial minorities with an aggressive regime of inspections and code enforcement.  *See* Compl. ¶¶ 62, 65, 76, 98-99, 110-11, 114.  Indeed, the allegations of unfair treatment in *Ellis* were far more numerous—and far more detailed—that the allegations in this case.

Khan nevertheless argues that this case is distinguishable from *Ellis* because, in this case, he has alleged that the City has a policy of putting landlords like him on "management plans" that forbid them from renting to persons with criminal histories or unlawful detainers.  But Kahn's complaint does not say anything about "management plans," nor does it allege the existence of a policy or practice of forbidding landlords from renting to certain classes of tenants.  Instead, the complaint merely alleges that the City told Khan that he personally could not rent to certain classes of tenants.  Compl. ¶¶ 109, 120.  This is insufficient to allege a City-wide policy.  *See Inclusive Communities*, 135 S. Ct. at 2523 ("a one-time decision may not be a policy at all"); *Ellis*, 860 F.3d at 1113 (rejecting the plaintiffs' attempt to "bootstrap" a series of individual decisions in order to allege the existence of a policy).

Khan also points to the two-strikes ordinance under which the City revoked his remaining licenses for five years.  This ordinance is obviously a policy, but Khan has not adequately alleged that the policy is "artificial, arbitrary, and unnecessary."  *Inclusive Communities*, 135 S. Ct. at 2522.  Both the Supreme Court and the Eighth Circuit have

recognized that municipalities have a legitimate interest in enforcing health and safety codes. *Id.* at 2524; *Ellis*, 860 F.3d at 1110-11. As discussed above, a policy that precludes a landlord with two license revocations from holding additional rental licenses for a period of time can hardly be called artificial or arbitrary, and Khan has alleged no facts plausibly establishing that such a policy is unnecessary. Khan has therefore failed to allege the existence of an artificial, arbitrary, and unnecessary policy.

Even if Khan had adequately alleged the existence of such a policy, he has failed to plead sufficient facts to plausibly meet the "robust causality requirement" mandated by *Inclusive Communities*. Khan alleges no facts about the impact of the City's code-enforcement practices on protected classes; indeed, he does not even allege facts that would show a connection between the City's code-enforcement practices and some kind of protected-class disparity. Because Khan has failed to plead a plausible disparate-impact claim under the FHA, the Court grants defendants' motion for judgment on the pleadings.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for judgment on the pleadings [ECF No. 38] is GRANTED.

2. Plaintiff's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 20, 2018    s/Patrick J. Schiltz
                             Patrick J. Schiltz
                             United States District Judge